MYERS, J.,
for the Court.
¶ 1. On April 21, 2003, the Mayor and Board of Aldermen of the City of Vicksburg rendered its decision to terminate Gary Cooper’s employment with the Vicksburg Police Department. Cooper appealed this decision to the Civil Service Commission of the City of Vicksburg, and a hearing was conducted on August 13, 2003. On August 21, 2003, the Commission affirmed the decision of the Mayor and Board of Aldermen. Cooper appealed the decision of the Commission to the Circuit Court of Warren County, and on May 27, 2004, the circuit court reversed and remanded the decision of the Commission.
¶ 2. Aggrieved by the judgment of the circuit court, the City of Vicksburg ("the City”) now appeals, raising the following three issues:
I. WHETHER THE CIRCUIT COURT ERRED IN FINDING THAT A CONFLICT EXISTED BETWEEN A CIVIL SERVICE COMMISSIONER AND THE POLICE CHIEF WHEN THAT ISSUE WAS NOT BRIEFED NOR ARGUED ON APPEAL BY THE APPELLEE?
II. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE DECISION OF THE VICKSBURG CIVIL SERVICE COMMISSION TO TERMINATE OFFICER GARY COOPER?
III. WHETHER OFFICER COOPER WAS DISCIPLINED TWICE FOR THE SAME OFFENSE?
¶ 3. Finding that the circuit court erred in ordering the recusal of one of the commissioners, we reverse the judgment of the circuit court and remand for proceedings consistent with this opinion.
FACTS
¶ 4. On May 22, 2003, Officer Gary Cooper and others were manning a roadblock in Vicksburg, set up for the purpose of *128 arresting violators of the city’s loud music ordinance. Officer Cooper stopped a car which was playing loud music, and proceeded to arrest the driver. The driver was handcuffed, placed in Cooper’s patrol car, and told that his vehicle would be towed. The driver pleaded with Cooper to give him a break. Cooper asked the driver what his name was, to which the driver replied, “Hildon Sessums.” Cooper then asked if he was related to David Sessums, a local attorney. The driver said yes, and, because David Sessums had helped Cooper out during his divorce, Cooper decided to give the young man a break (as a favor to David Sessums). Thus, Cooper canceled the tow truck order and returned the driver back to his ear and let him go.
¶ 5. Cooper’s superior officer at the scene asked him what was going on when Cooper returned with the driver of the vehicle. When Cooper told the other officer he was “giving the kid a break” because he was David Sessums’s son, the other officer became angry and told Cooper that it was wrong of him to do that. The young man was allowed to leave, but the superior officer at the scene made his displeasure known to Cooper.
¶ 6. Some days later, The Vicksburg Post ran an article about the incident. Apparently, the driver of the vehicle, who was actually not the son of David Sessums, called the newspaper and informed them that he had been harassed by police officers. The police officers were both African Americans, but the driver of the vehicle (who was arrested and then let go) was Caucasian; so, the story generated some stir in the city government, at least in part it appears, because of supposed racial overtones in the story. The mayor then demanded an investigation to find out which officers were involved, and this investigation implicated Cooper, who promptly admitted to being at fault in the incident. Shortly thereafter, Cooper was terminated.
¶ 7. Cooper had received several reprimands and suspensions in the previous eighteen months leading up to this incident that eventually led to his termination. Among the violations he had been disciplined for were: having not properly polished boots, being tardy, leaving his beat without permission, stopping by the station to eat pizza when he was supposed to be out on patrol, and failing to file a report for a disturbance/trespass.
¶ 8. Cooper was terminated from the Vicksburg Police Department for violating “Civil Service Regulation Rule XII 12.2(c), (e), (k), and © and Standard Operating Guideline 94-02, Code of Ethics I Paragraph A(3), VI Conduct (c), and Rule IV, Disciplinary action 4.1(c), (f), and (n).” In essence, he was terminated for the string of disciplinary violations, culminating in giving a suspect preferential treatment. The Disciplinary Statement presented to the Mayor and Board of Aldermen by the Chief of Police also declared that Cooper had demonstrated his inability to perform the duties of a police officer over the past eighteen months and that Cooper had disobeyed instructions given by the Chief of Police relating to the loud music ordinance.
¶ 9. Cooper appealed his termination to the Vicksburg Civil Service Commission, which, by a two to one vote, affirmed the Mayor and Board of Aldermen’s decision to terminate Cooper. Cooper appealed the decision of the Civil Service Commission to the circuit court, which reversed and remanded the decision of the Commission. The circuit court found that one of the commissioners should have recused herself from the proceedings because she was the pastor of the church where the Chief of Police was a member.
*129 LEGAL ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED IN FINDING THAT A CONFLICT EXISTED BETWEEN A CIVIL SERVICE COMMISSIONER AND THE POLICE CHIEF WHEN THAT ISSUE WAS NOT BRIEFED NOR ARGUED ON APPEAL BY THE APPELLEE?
¶ 10. The City argues that, since the recusal issue was not raised on appeal to the circuit court, the issue was procedurally barred and that the circuit court was without authority to raise the issue sua sponte. The City also argues that Cooper cites to no authority in support of his arguments on this issue in the present appeal and that, therefore, his arguments on this issue should be found to be procedurally barred. Cooper concedes that he did not raise the recusal issue on appeal to the circuit court; yet, he argues that, nonetheless, the circuit court properly considered and decided the case.
STANDARD OF REVIEW
¶ 11. Ordinarily in reviewing the decision of a circuit court, sitting as an appellate court, “we look beyond the decision of the circuit court and examine the decision of the City,” because “the circuit court’s role was not as a trier of fact, but rather as an appellate court.” Mayor & Bd. of Aldermen, City of Clinton v. Welch, 888 So.2d 416, 418(1110) (Miss.2004). However, in the case sub judice we are called upon first to examine a particular legal conclusion reached by the circuit court on the issue of whether one of the commissioners should have recused herself. The circuit court held that the commissioner in question applied an incorrect legal standard in making her decision not to recuse herself. Thus, since this issue deals with the circuit court’s ruling on an issue of law, we will review this particular issue de novo. Howard v. Totalfina E & P USA Inc., 899 So.2d 882, 885(114) (Miss.2005).
DISCUSSION
¶ 12. At the commencement of the hearing before the Commission, Cooper moved for Commissioner Sweezer to re-cuse herself from hearing the case. The following exchange occurred in regards to this motion:
Mr. Sessums: With due difference [sic], Mr. Cooper will request that Commissioner Linda Sweezer recuse herself from the hearing of this matter. We have it on good information and belief that Ms. Sweezer is a pastor or evangelist at the church attended by Chief Moffet. We think that would, at a minimum, create an appearance of impropriety, cast some doubt, whether real or imagined, but we think that it is enough that she recuse herself as to her impartiality and ability to be impartial in this case....
Commissioner Sweezer: And I want to say too, just for the record that I feel like with any of the situations that I have come before me, and I’ve been on this Commission longer than the other two commissioners, and I think that I have been reappointed because of the fact that I’ve looked at things on a very fair basis and a fair level. So, I have no problem again listening today and I’m going to listen to the evidence and I’m going to listen to everything that is being presented and make a decision as I always do, based on the facts. So, I don’t choose to recuse myself.
Commissioner Graham: The Chair would like to state that it will not require Commissioner Sweezer to recuse herself. Additionally, the Chair has served with Mrs. Sweezer for better than four years and is well aware of her impartiality, and as Ms. Thomas men *130 tioned, it is a matter of historic fact that we have reversed cases where Chief Moffet was involved and we have modified cases. So, Mr. Sessums, the Motion is denied.
¶ 13. The circuit court, in rendering its judgment, found that Commissioner Sweezer improperly used a subjective test in deciding whether or not to recuse herself. The circuit court held:
Mississippi has an objective test in determining when a judge should recuse himself or herself. A judge is required to disqualify himself or herself if a reasonable person, knowing all the circumstances, would harbor doubts about his or her impartiality. Hunter v. State, 684 So.2d 625 (Miss.1996). The test is not a subjective test as was used by Commissioner Sweezer of whether she felt she could be impartial.
The Court finds that the personal relationship of pastor/parishioner is such that a reasonable person would harbor doubts. It is the type of personal interest that objectively overcomes the presumption of fairness. United Cement Co. v. Safe Air for the Env., Inc., 558 So.2d 840 (Miss.1990).
¶ 14. Even though we might tend to agree with circuit court’s conclusion that the pastor/parishioner relationship is of the type that could possibly cause a reasonable person to harbor doubts about impartiality, we find that, nonetheless, this issue is procedurally barred for Cooper’s failure to raise the issue on appeal to the circuit court. In addition, Cooper cites no authority in support of his arguments before us, and, while Cooper is responding to the City’s issue, and, therefore, has not raised an “issue” or “assignment of error” that might be procedurally barred in the present appeal, this failure to cite authority in support of his arguments may be construed as conceding to the City’s arguments. Holloway v. Jones, 492 So.2d 573, 573-74 (Miss.1986).
¶ 15. Yet, regardless of how we should treat Cooper’s failure to cite authority in support of his arguments on this appeal, we find that the City has correctly argued that Cooper’s failure to brief or argue the recusal issue to the circuit court waived the issue for review. Slay v. Spell, 882 So.2d 254, 261(¶ 20) (Miss.Ct.App.2004) (citing Douglas v. Blackmon, 759 So.2d 1217, 1221 (¶ 13) (Miss.2000)). We also note that, even if Cooper had properly raised the recusal issue to the circuit court sitting as an appellate court of a decision of a municipality’s civil service commission, that issue would probably still have been procedurally improper pursuant to the limited scope of review established under Mississippi Code Annotated § 21-31-23 (Rev. 2001). That provision limits the scope of the circuit court’s review of a civil service commission’s decision to:
[T]he determination of whether the judgment or order of removal, discharge, demotion, suspension or combination thereof made by the commission, was or was not made in good faith for cause, and no appeal to such court shall he taken except upon such ground or grounds.
Id. (emphasis added). Thus, given this limitation upon the circuit court’s scope of review, we find that the recusal issue would likely not have been procedurally proper in any event; but, as noted, we find that Cooper failed to raise the issue before the circuit court, and on that basis, we find the issue to have been procedurally barred at the circuit court level. Because of this, we reverse the judgment of the circuit court on the issue of Commissioner’s Sweezer’s recusal.
CONCLUSION
¶ 16. Since the circuit court did not make any findings nor render a judgment *131 on the merits of the case, instead basing its judgment solely on the issue of Commissioner’s Sweezer’s recusal, we find that the other two issues raised by the City are not yet ripe for consideration by this Court. There was no final judgment rendered by the circuit court on the issues of whether the commission’s decision was supported by sufficient evidence and whether Cooper was punished twice for the same offense. Therefore, we find that the other two issues raised by the City are not properly before this Court at this stage of the proceedings. Having found that the circuit court erred in the sole issue that it decided, namely, the recusal of Commissioner Sweezer, we reverse and remand this case to the circuit court for further proceedings consistent with this opinion.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR.