606 So.2d 1117 (1992)
John Billy GENTRY
v.
Dr. John M. WALLACE, Dr. Thomas K. Judd, Dr. Daniel W. Jones, d/b/a Internal Medicine Clinic of Laurel, P.A.; Dr. P.A. Pittman; Dr. Peeler G. Lacey; Dr. Clyde R. Allen; Dr. C.G. Hull, III; Dr. Susan S. Cannon; Dr. Kelly E. Hutchins.
No. 89-CA-133.
Supreme Court of Mississippi.
August 19, 1992.
Rehearing Denied October 8, 1992.
*1118 T. Mack Brabham, Brabham & Bean, McComb, for appellant.
Anthony L. Thaxton, Gilchrist Sumrall Thaxton & Yoder, Robert D. Gholson, Gilchrist Sumrall Thaxton Firm, Laurel, Dorrance Aultman, Aultman Tyner McNeese & Ruffin, Hattiesburg, Brooke Ferris, Gibbes Graves Mullins Bullock & Ferris, Ernest W. Graves, Gibbes Graves Mullins Firm, Laurel, Douglas E. Levanway, Wise Carter Child & Caraway, R. Mark Hodges, Wise Carter Firm, Jackson, for appellee.
EN BANC.
McRAE, Justice, for the Court:
This appeal arises from a September 16, 1988, order of the Jones County Circuit Court granting summary judgment to the appellees in a wrongful death medical negligence action. Finding that the Circuit Court erred in concluding that the statute of limitations on a wrongful death action began to run when the negligence of the physicians was discovered prior to death, we reverse and remand for a full trial on the merits.

I.
Sometime in 1981, Mary D. Gentry was diagnosed as having cancer in her right breast and underwent a radical mastectomy. Several years later, she experienced swollen lymph nodes and other disturbing symptoms. Between September, 1984, and March 1, 1985, she was under the care of Dr. P.A. Pittman and Dr. John M. Wallace. Neither physician diagnosed or treated Mrs. Gentry for cancer. Her condition continued to worsen and out of dissatisfaction with the treatment she was receiving from both Dr. Pittman and Dr. Wallace, she sought another opinion. She consulted Dr. Charles J. Parkman of the Hattiesburg Clinic in Hattiesburg, Mississippi. Dr. Parkman immediately diagnosed metastatic breast carcinoma and advised her on March 1, 1985, that her condition was so far advanced due to the lack of treatment that he would be unable to take any reasonable medical treatment to prolong or save her life. On March 15, 1985, Mary D. Gentry departed this world, hastened along by "adenocarcinoma of the breast, metastatic to the lung."
Mrs. Gentry's son and sole surviving heir, John Billy Gentry, filed this wrongful death action on March 16, 1987. This was exactly 2 years and 1 day after her death, but allowance was made for March 15, 1987, which was a Sunday. The suit charged that the defendant physicians were remiss in "their duty to exercise that minimum degree of care, skill, diligence and prudence as other physicians in the United States practicing in their field of specialty, subject to available facilities." Gentry further averred that:

*1119 [t]he plaintiff would show that as a direct and proximate result of the negligence of any one of or all of the above named defendants that such caused or contributed to the death of Mary D. Gentry and that the Estate is entitled to recover all burial fees and expenses and that John Billy Gentry is entitled to recover statutory damages allowed to him as the sole surviving heir of Mary D. Gentry including, but not limited to, the loss of society and companionship, the present net cash value of the life expectancy of Mary D. Gentry, the pain and suffering endured by Mary D. Gentry prior to her death, all reasonable medical expenses, and any other damages allowed by law.
After limited discovery, the defendant physicians moved for summary judgment, citing the affirmative defense of the two year wrongful death statute of limitations embodied at Miss. Code Ann. § 15-1-36(1) (Supp. 1987). On September 16, 1988, the Circuit Court of Jones County granted summary judgment as to all the defendants. In so ruling, the trial judge relied principally on Tribou v. Gunn, 410 So.2d 378 (Miss. 1982) and Kilgore v. Barnes, 508 So.2d 1042 (Miss. 1987). These cases articulate the now familiar point that in a medical malpractice suit, the cause of action accrues when the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered. The trial judge reasoned that the cause of action accrued on March 1, 1985, when the misdiagnosis  or more accurately, the failure to diagnose  came to light. At that point, the statute of limitations started running. The last date on which Mary Gentry could have filed a medical malpractice claim would have been two years later, on March 1, 1987. John Billy Gentry filed the wrongful death action on March 16, 1987, two years after his mother's death. The trial judge ruled that under the statute, his claim was barred and entered summary judgment in favor of the physicians.

II.
On appeal, we consider only the question of whether a wrongful death action arising in the context of medical negligence is measured from the date the decedent knew or should have known about the act of negligence. We hold that it does not. Rather, the cause of action does not accrue until the death of the negligently injured person. Accordingly, Gentry's suit is not barred by the statute of limitations.
The statute governing the limitation period in a medical negligence action reads in part:
Except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, ... for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.
Miss. Code Ann. § 15-1-36(1) (Supp. 1991).
Had Mary Gentry lived to bring a medical negligence action for the personal injuries she sustained, the clock would have begun to tick on March 1, the date she might have reasonably discovered the negligence of her physicians. However, this is a wrongful death action brought by John Billy Gentry in his capacity as his mother's sole surviving heir. Wrongful death is a separate and distinct cause of action, which can be brought only by the survivors of the deceased. Miss. Code Ann. § 11-7-13 (1972 and Supp. 1991). Without and until the death of Mary Gentry, there was no cause of action under the wrongful death statute to trigger the two year statute of limitations. Further, under the statute, the limitations period does not begin to run until the heir knows or should reasonably know about the medical negligence which caused the death.
As it stands, the ruling of the trial court erroneously assumes that wrongful death and medical negligence causes of action are synonymous. However, wrongful death has been recognized as a tort separate and distinct from other personal injury actions. See Partyka v. Yazoo Development Corp., 376 So.2d 646, 650 (Miss. 1979); Hasson Grocery Co. v. Cook, 196 Miss. 452, 17 So.2d 791, 792 (1944); see also *1120 Matthews v. Celotex Corporation, 569 F. Supp. 1539, 1543 (D.C.N.D. 1983); Woods v. Monroe Manor Nursing Homes, Inc., 530 So.2d 1221, 1222 (Fla. 1988); Sheets v. Graco, Inc., 292 N.W.2d 63, 67 (Mo. 1980); Ratka v. St. Francis Hospital, 44 N.Y.2d 604, 609, 407 N.Y.S.2d 458, 460, 378 N.E.2d 1027, 1030 (1978). We are reminded that while a personal injury case enables an injured party to recover damages for the injuries he has sustained, a wrongful death action is intended to compensate the heirs of the deceased for losses stemming from the death of the injured party. Sheets, 292 N.W.2d at 67. Thus the damages sought are likewise separate and distinct and must not be confused with the cause of action raised.
A review of the history of the wrongful death action is instructive in illustrating the distinction between that and other personal injury or negligence actions. In earlier times, we adhered to the common law rule that recovery of damages was allowed for the negligent injury of another, but upon the death of the injured party, the right to recover was extinguished because it was personal. Courts obeyed the maxim that actio personalis moritur cum persona or in modern parlance  a personal action dies with the person. This rule is thought to have originated with Baker v. Bolton, 170 Eng.Rep. 1033 (1808) wherein Lord Ellenborough declared: "In a civil court, the death of a human being could not be complained of as an injury." T.A. Smedley, Wrongful Death  Bases of the Common Law Rules, 13 Vanderbilt Law Review 605, 606 n. 4 (and accompanying text) (1960). A similar prohibition against causes sounding in the death of another goes to an even earlier period of the common law. See 3 W. Blackstone, Commentaries [*]302: "And in actions merely personal, arising ex delicto, for wrongs actually done or committed by the defendant, such as trespass, battery, and slander, the rule is that actio personalis moritur cum persona; and it never shall be revived either by or against the executors or other representatives." Thus, at common law, the wrongful death cause of action did not exist. Smith v. Garrett, 287 So.2d 258, 260 (Miss. 1973); Logan v. Durham, 231 Miss. 232, 95 So.2d 227 (1957).
The rule in Baker v. Bolton crossed the Atlantic Ocean and spread throughout the United States. Speiser, Recovery for Wrongful Death § 1:3 (1966). But its harshness soon brought forth a clamor for relief and in 1846, the English Parliament passed what is now known as "Lord Campbell's Act." This statute provided that whenever the death of any person was caused by the wrongful act, neglect or default of another, in such a manner as would have entitled the party injured to have sued had death not ensued, an action could be maintained if brought within twelve months after his death in the name of his executor or administrator for the benefit of certain relatives. Hence, this Act created a new cause of action based upon a wrongful act, limited recovery to certain named beneficiaries, and measured damages with respect to the loss suffered by those beneficiaries. Id. Lord Campbell's Act was soon adopted by many jurisdictions in the United States, beginning with New York in 1847. Mississippi joined the bandwagon in 1892. The Code of 1892, § 663 reads in part:
Whenever the death of any persons shall be caused by any such wrongful or negligent act or omission as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof... . In every such action the jury may give such damages as shall be fair and just with reference to the injury resulting from such death to the person suing; but every such action shall be commenced within one year after the death of such deceased person.
Under our present wrongful death statute, Miss. Code Ann. § 11-7-13 (1972 and Supp. 1991), the heirs of a negligently injured decedent now may bring suit to recover all damages arising from the "wrongful death."
Implicit in the codification of wrongful death action is the notion that a claim sounding in wrongful death comes into being upon the death of the deceased. The one-year limitation period was later dropped from the original wrongful death *1121 statute, leaving the matter to be governed by the six-year statute. See e.g. Gulf & S.I.R. Co. v. Bradley, 110 Miss. 152, 69 So. 666 (1915). The limitation period has since been further amended to three years. But amidst these twists and turns, this Court has continued to hold that a cause of action accrues at the time of death. Smith v. McComb Infirmary Ass'n, 196 So.2d 91 (Miss. 1967); Pickens v. Illinois Central R. Co., 92 Miss. 210, 45 So. 868 (1908); Foster v. Yazoo & MS Valley R. Co., 72 Miss. 886, 18 So. 380 (1895)
It is elementary one cannot sue unless he has an enforceable claim. Estate of Kidd v. Kidd, 435 So.2d 632 (Miss. 1983); Rankin v. Mark, 238 Miss. 858, 120 So.2d 435 (1960); Aultman v. Kelly, 236 Miss. 1, 109 So.2d 344 (1959); Walley v. Hunt, 212 Miss. 294, 54 So.2d 393 (1951). If, for some reason, suit is brought before it is ripe, dismissal is proper. Euclid-Miss. v. Western Casualty & Surety Co., 249 Miss. 547, 163 So.2d 676 (1964); Boydstun v. Pearson, 239 Miss. 479, 123 So.2d 621 (1960); Miller v. Fowler, 200 Miss. 776, 28 So.2d 837 (1947). In Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 706 (Miss. 1990) we held:
A cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested. [Cites omitted]. A cause of action must exist and be complete before an action can be commenced, and, when a suit is begun before the cause of action accrues, it will generally be dismissed if proper objection is made.
See also Young v. Southern Farm Bureau Life Ins., 592 So.2d 103, 107 (Miss. 1991) (cause of action for bad faith breach of insurance contract does not accrue for limitations purposes until wrongful act is complete). In the case before us, the cause of action for Mary Gentry's wrongful death did not and could not have accrued until the day she died. Further, it is elementary that the "right to sue" did not and could not have vested until Mary Gentry died. Our wrongful death statute provides a cause of actions to the survivors of those who die as a result of wrongful conduct. A person cannot qualify as a "survivor" until he survives someone.
The appellees answer by claiming that a claim for wrongful death can theoretically expire prior to the death on which the claim is based. They rely on the following language in the statute:
No claim in tort may be brought ... for ... wrongful death ... unless it is filed with two (2) years from the date of the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.

Under the appellees' reading of the statute, the limitations period for a wrongful death action begins to run at the time when the doctor's negligence is or should have been discovered, even if the victim of the negligence has not yet died. Applying this interpretation to the case at hand, the appellees insist that the limitations period began to run on March 1, 1985, the date on which Dr. Charles Parkman revealed the failure of Mary Gentry's former physicians to properly diagnose her disease. Thus, the appellees conclude that the March 16, 1987, complaint was filed two weeks and one day after the limitations period expired.
We see several fatal flaws in the appellees' analysis. First, there is nothing in the record to establish that the plaintiff, John Billy Gentry, knew or should have known about the defendants' negligence on March 1, 1985. It is clear that Mary Gentry knew. Had she lived and brought a personal injury action, the limitations period would no doubt have expired on March 1, 1987. But, as we have already established, a wrongful death action is an entirely different creature than a personal injury action. A wrongful death cause of action belongs to the survivor, not to the decedent. What the decedent knew, and when, is therefore irrelevant in determining the date on which a limitations period begins to run for purposes of a wrongful death action. We must look at what the survivor knew or reasonably should have known. We have no way of knowing when John Billy learned or should have learned about *1122 the defendants' negligence. The trial court thus had no legitimate basis for determining that the limitations period in the instant action began to run on March 1, 1985.
Secondly, the appellees misconceive what it is that a wrongful death plaintiff must or should "know" in order to trigger the limitations statute. Section 15-1-36 requires wrongful death actions based on medical negligence to be filed within two years after "the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." Again, the appellees fail to appreciate the critical differences between personal injury actions and wrongful death actions. In a personal injury action for medical negligence, the plaintiff typically "knows or should know" about the negligence when the injury manifests itself or, in some cases, when subsequent diagnosis or treatment reveals the harm. Stated differently, "[p]resciption does not begin to run against one who is ignorant of facts that would entitle him to bring an action." Ayo v. Johns-Manville Sales Corp., 771 F.2d 902, 906 (5th Cir.1985). The most basic fact a wrongful death plaintiff must know in order to be aware that he is "entitled to bring an action" is that a death has occurred. A physician can engage in the most wretched acts of negligence in plain view of a patient's family, but until the patient dies, the family members cannot know the one indispensable fact that would "entitle them to bring an action." In the wrongful death context, therefore, the "alleged act, omission or neglect" to which § 15-1-36 necessarily refers is to lethal conduct. There is no logical way that a potential wrongful death plaintiff can "know or discover" conduct entitling him to sue until the decedent dies. In this case, John Billy Gentry "knew or discovered" prior to March 15, 1985, that his mother's former doctors had committed negligent acts. However, he could not have "known" that the doctors had committed acts of lethal negligence until Mary Gentry died on March 15, 1985. Suit was timely filed two years and one day after the death. The "one day" does not place the filing outside the two-year statutory period since the last day of the limitations period fell on Sunday. Nelson v. James, 435 So.2d 1189, 1191 (Miss. 1983) (when last day of limitations period falls on Sunday, action filed on the next day, Monday, is timely).
Were we to accept the appellees' argument that the limitations period for wrongful death actions can begin to run prior to the death, we would, in effect, be construing § 15-1-36 as a statute of repose, not a statute of limitation. This Court views statutes of repose with disfavor, and if the statute is ambiguous, we place upon it a construction which favors the preservation of the plaintiff's cause of action.
This is particularly true in actions for injury or death. In Jackson v. Johns-Manville Sales Corp., 727 F.2d 506 (5th Cir.1984), the Fifth Circuit found that under Mississippi law, claims for separate injuries were divisible. By recovering damages for his asbestosis injuries, the appellant would not be barred from later seeking damages from any separate but related injury that might occur in the future. Id. at 521. In so ruling, the court stated that "[t]o permit `recovery' for harms not yet effected would contravene Mississippi's clear policy against treating manufacturers as insurers of their products." Id. at 520. The court further held that the divisibility of the causes of action required that they be discrete for limitations purposes, stating that "[i]t would disadvantage a plaintiff unfairly and disserve judicial economy to measure the limitations periods for future diseases from the time of manifestation of a separate and distinct disease." Id. at 521.
The appellees correctly point out that where the language of a statute is clear and unambiguous, there is no room for construction. MISS CAL 204, LTD. v. Upchurch, 465 So.2d 326 (Miss. 1985). But it is equally true that a statute should be given that reading which best fits the legislative language and is most consistent with the best statement of policies and principles justifying that language. Warren County v. Culkin, 497 So.2d 433, 436 (Miss. 1986). A statute should be given that reading most coherent in principle, given the entire statutory scheme and the *1123 other valid rules in the field. McIntire v. Moore, 512 So.2d 687, 689 (Miss. 1987). A reading which, as here, would lead us to the conclusion that the statute of limitation can start running before death, should be avoided.
We find that John Billy Gentry's cause of action for the wrongful death of his mother is not barred by the statute of limitations. His cause of action accrued no earlier than March 15, 1985, the date of Mary Gentry's death, not March 1, 1985, the date she discovered the negligence of her physicians. Accordingly, we need not address the issue of Mrs. Gentry's date of discovery. Further, there is no evidence in the record before us of when her son was informed.
We therefore reverse the order of the Circuit Court granting summary judgment for the defendants and remand for a trial on the merits.
REVERSED AND REMANDED FOR A NEW TRIAL.
DAN M. LEE, P.J., and SULLIVAN, PITTMAN and BANKS, JJ., join this opinion.
ROBERTSON, J., dissents with separate written opinion joined by ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, J.
ROBERTSON, Justice, dissenting:
This appeal arising from a wrongful death medical malpractice action presents the rather straightforward question whether Plaintiff John Billy Gentry sued within the two year time frame allowed by law.[1] The substantive charge is negligent failure to diagnose. Our inquiry begins and ends with the statute, Miss. Code Ann. § 15-1-36 (Supp. 1987), which in relevant part provides:
No claim in tort may be brought against a licensed physician, ..., for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date of the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.... [Emphasis added]
All concede Mary D. Gentry knew enough of her claim on March 1, 1985, to start the limitations clock. Shutze v. Pace, 557 So.2d 776 (Miss. 1990); Tribou v. Gunn, 410 So.2d 378, 379 (Miss. 1982). As this is so, the suit is barred, for it was not brought until March 16, 1987  two years, sixteen days later.
John Billy argues his is a death claim and as such arises only on the date of Mary's death  March 15, 1985.[2] But this can be so only if the claim he now brings differs in some legally significant way from Mary's claim before her death. It does not. A death action is derivative in nature, arising from and dependent upon the wrong done the (fatally) injured person. The statute says who can sue and who can recover, but this does not erase that none could sue or recover but for the defendant's tort. The death affects little beyond the procedural form of the action. The neglect is the same and the cause is the same, and at trial the proofs would be the same. The legally cognizable damages are much the same.
John Billy presses us and argues the statute is illogical in the sense that it could bar a plaintiff's wrongful death claim before the claim (in his understanding) ever accrues. He says a physician could commit malpractice and the patient not die until more than two years after discovery. I regret the Court is seduced by the point, for it lies on the same false premise. It ignores the derivative nature of John Billy's claim. All of this has little impact here, as John Billy Gentry had one year, 350 days following his mother's death within which to file suit, but, assuming for the sake of argument that what John Billy suggests could happen, nothing of moment *1124 follows. At the risk of redundancy, the gravamen of the malpractice claim is the same whether the patient suffers personal injuries or wrongful death. The facts and legal theory on fault and causation are identical. Mary D. could have sued at any time before her death, upon which John Billy could have been substituted as plaintiff. Rule 25(a), Miss.R.Civ.P. Such a revived suit would have been in every way identical to the suit John Billy has in fact brought  sixteen days too late.
Our law is settled that the Legislature has authority to provide a period of limitations which may expire before the plaintiff in fact experiences (all of) the damages for which he sues. Reich v. Jesco, Inc., 526 So.2d 550 (Miss. 1988); Smith v. Flour Corp., 514 So.2d 1227, 1231-32 (Miss. 1987); Anderson v. Fred Waggoner and Roy Anderson, Jr., Inc., 402 So.2d 320, 321 (Miss. 1981); see also, Alexander v. Conveyors and Dumpers, Inc., 731 F.2d 1221 (5th Cir.1984), and Price v. IT & T Corp., 651 F. Supp. 706 (N.D.Miss. 1986). Suffice it to say that there is nothing inherently irrational about the Legislature's decision to designate "the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered" as the date the limitations clock begins to run on a medical malpractice claim, whether it be brought for personal injuries or for wrongful death.
On like premises, the courts of other states have rejected the argument that the period of limitations in wrongful death medical malpractice claims begins with the date of the death of the patient. See, e.g., Crownover v. Gleichman, 38 Colo. App. 96, 554 P.2d 313, 316 (1975), aff'd., 194 Colo. 48, 574 P.2d 497, 499 (1977), cert. denied, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); see also, Grimm v. Ford Motor Company, 157 Mich. App. 633, 403 N.W.2d 482, 485 (1986); Price v. IT & T Corp., 651 F. Supp. 706, 711 (N.D.Miss. 1986) (Lee, J., granting defendant's summary judgment motion); Alexander v. Conveyors and Dumpers, Inc., 731 F.2d 1221, 1228 (5th Cir.1984) (applying Mississippi law and directing a verdict against the plaintiff on statute of limitations grounds).
The majority ignores all of this and treats us to a history of the fiction that survival actions and wrongful death actions differ in a way we should think important. History and fiction fade in the face of the statute that says simply no action may be brought against a licensed physician for malpractice-induced wrongful death more than two years of the date of discovery. "First known or discovered" within the act sensibly means "by the victim of the malpractice and those in privity with her," to each of whom the knowledge of any one is imputed, which brings us to John Billy's final point. He says it is his knowledge that counts, as he is now the plaintiff, and he had no reason to know of the malpractice until well after his mother's death. Conceding the clock may have begun on March 1, 1985, on his mother's claim, he says he is the plaintiff and is entitled to a new clock beginning his date of discovery.
Knowledge one may in fact reasonably be expected to share with her kin should in law be imputed to them. If Mary as the party injured knew or had reason to know of her claim, common sense suggests what common experience teaches. John Billy and other next of kin may at least be held to have "with reasonable diligence ... known or discovered" what in fact his mother knew and at the time she knew it. If these be close enough to her that they be given standing to sue for her death, no injustice attends imputing her knowledge to them.
There are some old cases that, on their face, say what John Billy says they say. He cites Arender v. Smith County Hospital, 431 So.2d 491 (Miss. 1983), and Smith v. McComb Infirmary Association, 196 So.2d 91 (Miss. 1967). The problem is that Arender and Smith were decided under a former version of Miss. Code Ann. § 15-1-49 (1972), our residual statute of limitations for "actions not otherwise specifically provided for," the Court holding that the two-year medical malpractice statute, Section 15-1-36, applied only to actions for personal injuries. What happened is that in 1983, the Legislature amended the medical malpractice statute to provide expressly that *1125 discovery triggered its two-year time clock in actions "for injuries or wrongful death arising out of the course of medical, surgical or other professional services... ." Miss. Laws, ch. 482 § 1 (1983). Fairly read, the statute relegates Arender and Smith to the junkheap and provides that the date of first discovery begins the running of the period of limitations in all medical malpractice cases, whether for injuries or wrongful death.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, J., join this opinion.
NOTES
[1] John Billy has sued not individually but as the personal representative of his deceased mother, Mary D. Gentry. See Miss. Code Ann. § 11-7-13 (Supp. 1987).
[2] Even so, he is a day late and still time barred. He brought his suit, remember, on March 16, 1987.